UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 20-013-DCR |
| ) | |
| V. ) | |
| ) | |
| GUADALUPE RAMOS, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

*** *** *** ***

Defendant Guadalupe Ramos was indicted on January 16, 2020, on three charges: (1) possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount fentanyl in violation of 21 U.S.C. § 841(a)(1); and (3) possession with intent to distribute a mixture or substance containing a detectable amount marijuana in violation of 21 U.S.C. § 841(a)(1). [Record No. 5]

United States Magistrate Judge Matthew A. Stinnett held a pretrial detention hearing for the defendant on January 21, 2020. [Record No. 10] The United States presented evidence during this hearing that "law enforcement located 1,668 grams of fentanyl pills (approximately 12,500 pills) that had been pressed into tablets to look like Percocet 30 milligram tablets" while executing a search warrant of a property maintained by Ramos under an alias. [Record No. 15, p. 6] Further, "[l]aw enforcement also located approximately 8 pounds of crystal methamphetamine and approximately 55 pounds of marijuana." *Id.* A separate search of

Ramos' primary residence turned up another half-pound of crystal methamphetamine. *Id.* Magistrate Judge Stinnett found that pretrial detention was appropriate under 18 U.S.C. § 3142 because there was clear and convincing evidence that Ramos posed an irremediable risk of danger to the community. [*Id.* at pp. 8-9]  Ramos subsequently entered a guilty plea on May 8, 2020, to all three counts charged in the Indictment. [Record No. 25]  His sentencing hearing is scheduled for August 21, 2020. [Record No. 26]

The defendant now moves the Court to revisit the issue of his detention and set bond because: (1) the risk of contracting COVID-19 is a "compelling reason" for his release given his preexisting health conditions (asthma and nasal infections); and (2) "information exists that was not known to [him] at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." [*Id.* at p. 4 (citing 18 U.S.C. § 3142(f)(2), (i)).]  The defendant asserts that he is not a flight risk under the factors outlined in § 3142(g) and "clearly" overcomes the presumption that he poses a danger to the community under the statute because his offenses were non-violent, he no longer possesses the means to acquire the substances that led to his initial detention and convictions, he will live with his girlfriend and children, and "his ties to the community . . . insure that he would do nothing more to harm his community." [*Id.* at pp. 2, 6-7]  He seeks bond and release from detention pending sentencing and requests a hearing on the matter.

Magistrate Judge Stinnett appropriately determined that the defendant should be detained pending trial under § 3142, but Ramos is incorrect to believe that this statute continues to govern his detention. Instead, he faces a higher burden under 18 U.S.C. §§ 3143 ("Release or detention of a defendant pending sentence or appeal") and 3145 ("Review and appeal of a

release or detention order"). Section 3143(a)(2) requires presentencing detention of a defendant convicted of, *inter alia*, "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) . . . ." 18 U.S.C. §§ 3142(f)(1)(C) and 3143(a)(2). There are narrow exceptions to this rule of detention when:

> (A)
>     (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>     (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2). Section 3145(c) permits a district court to release a defendant subject to detention under § 3143(a)(2) "if it is 'clearly shown,' among other things, that there are 'exceptional reasons' why his detention is inappropriate." *United States v. Christman*, 596 F.3d 870, 870-71 (6th Cir. 2010); *see also United States v. Cook*, 42 F. App'x 803, 804 (6th Cir. 2002). These "other things" include whether the defendant poses a flight risk or remains a danger to the community. *See United States v. Christman*, 712 F. Supp. 651, 654 (E.D. Ky. 2010) (citing 18 U.S.C. §§ 3143(a)(1) and 3145(c)). "[B]efore the Court can proceed to the exceptional reasons analysis, clear and convincing evidence must support a finding that the defendant is not likely to flee or pose a danger if released." *Id.* (citing 18 U.S.C. §§ 3143(a)(1) and 3145(c)).

Here, Ramos is subject to mandatory detention under § 3143(a)(2). The quantity of controlled substance involved in his methamphetamine-related conviction (500 grams or more) entails a maximum statutory sentence of life imprisonment, and the quantity involved in his

fentanyl-related conviction (40 grams or more) carries a statutory maximum of 40 years' imprisonment.  21 U.S.C. § 841(b)(1)(A)(vii), (B)(vi).  The United States has not recommended that no sentence of imprisonment should be imposed, and there is no likelihood that a motion for acquittal or a new trial will be granted.  18 U.S.C. § 3143(a)(2)(A).

While Ramos is required to demonstrate that he is not a flight risk and does not pose a danger to the community to initially avoid detention pending sentencing under § 3143(a)(2)(B) or obtain relief from an order providing for post-plea detention under § 3145(c), he has failed to carry his burden.  He pleaded guilty to charges that he intended to distribute extremely large quantities of controlled substances.  And testimony from his prior detention hearing indicates that he possessed 55 pounds of marijuana and 8.5 pounds of crystal methamphetamine.  Perhaps most concerning, there is evidence that he possessed approximately 12,500 pills containing fentanyl that were *disguised* to look like Percocet.  His motion offers only conclusory statements that he now lacks the means to acquire such drugs.

Additionally, Ramos claims that "ties to the community" and living with his girlfriend and children weigh in favor of release even though he lived with them in the same community when he committed the instant offenses.  [*See* Record No. 12]  In other words, Ramos suggests that the same living circumstances that were amenable to dealing in high quantities of controlled substances now mitigate his risk.  The Court flatly rejects this argument and finds that these circumstances weigh toward continued incarceration due to danger to the community.

Finally, Ramos' argument that he is not dangerous because the offenses he committed were nonviolent is completely unpersuasive.  "Drug trafficking is a serious offense that, in itself, poses a danger to the community."  *United States v. Stone*, 608 F.3d 939, n. 1 (6th Cir.

2010) (referencing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) ("[t]he risk of continued narcotic trafficking on bail constitutes a risk to the community")). And common-sense dictates that possessing with intent to distribute such large quantities of potentially lethal drugs (some of which were disguised as other drugs) is dangerous activity. Additionally, courts routinely consider whether offenses involve controlled substances when weighing the danger defendants pose to their communities. *See* 18 U.S.C. § 3142(g)(1).

In summary, Ramos has failed to show by clear and convincing evidence that he is not a danger to the community. Instead, the evidence plainly indicates the opposite. Therefore, his motion for bond will be denied.

But even if Ramos had carried his burden on this point, he has failed to articulate an "exceptional reason" for release pending sentencing. The defendant does not allege that he has contracted COVID-19. Instead, he claims that he *may* contract COVID-19 and believes that it poses an increased risk to his health due to his asthma and nasal infections. [Record No. 27, pp. 3-4] But the chance that the defendant could contract COVID-19 and suffer related health complications is not an exceptional reason for the purposes of release pending sentencing. *United States v. Johnson*, No. 1:19CR646, 2020 WL 2610737, at *2 (N.D. Ohio May 22, 2020) ("And while the Court agrees that COVID-19 is 'exceptional' in the normal sense of the word, it does not justify releasing Defendant pending his Sentencing. Defendant does not allege he contracted COVID-19. Rather, he speculates he will contract the virus. But exceptional reasons based on probability, conjecture, intuition or speculation do not justify

release.") (citing *Christman*, 712 F. Supp. 2d at 654).  Thus, even if he could make the requisite showing regarding danger to the community, his motion must be denied.[1]

Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Guadalupe Ramos' motion requesting bond pending sentencing [Record No. 27] is **DENIED**.

2. Because Ramos is clearly not entitled to relief, his request for another detention hearing is **DENIED**.

Dated:  June 2, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

[1]   Ramos also argues that release is justified because several district courts have granted sentence modifications under 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that the COVID-19 outbreak constitutes an "extraordinary and compelling reason" justifying release for the purposes of that statute. [Record No. 27, pp. 5-6]  The relevancy of this point is not entirely clear because such relief is sought by prisoners who, unlike Ramos, have already served part (often times a majority) of their respective sentences.  But to the extent it is relevant, it tends to weigh *against* granting bond pending sentencing because *this* Court has rejected the idea that coronavirus concerns constitute an "extraordinary and compelling reason" for release from custody, even when they are considered alongside other preexisting health conditions.  *E.g.*, *United States v. Prater*, No. 7:15-11-DCR-3, 2020 WL 2616120, at *2 (E.D. Ky. May 22, 2020); *United States v. Singleton*, No. 5: 13-8-KKC, 2020 WL 2319694, at *2 (E.D. Ky. May 11, 2020).